UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY LEWIS,

       Plaintiff,                                        Hon. Paul L. Maloney

v.                                                  Case No. 1:07-CV-628

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 58 years of age at the time of the ALJ's decision. (Tr. 25). She completed two years of college and worked previously as a general office clerk, sales clerk, cashier, and furniture assembler. (Tr. 25, 81, 86, 98-109, 123-38, 330).

Plaintiff applied for benefits on September 26, 2003, alleging that she had been disabled since September 1, 1996, due to carpal tunnel syndrome, as well as pain and tendinitis in her upper extremities. (Tr. 60-62, 80, 171-73). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 26-56, 177-80). On February 25, 2005, Plaintiff appeared before ALJ Douglas Johnson, with testimony being offered by Plaintiff and vocational expert, Richard Riedl. (Tr. 325-53).

In a written decision dated September 21, 2005, the ALJ determined that Plaintiff was not disabled. (Tr. 25-32). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-8). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision. Pursuant to a subsequent application for benefits, Plaintiff was found to be disabled as of October 1, 2006. (Dkt. #9).

**RELEVANT MEDICAL HISTORY**

On October 6, 1997, Plaintiff was examined by Dr. Clinton Harris. (Tr. 203). Plaintiff reported that she was experiencing bilateral forearm and wrist pain. (Tr. 203). Tinel's test[1] was negative and Plaintiff exhibited "normal sensation in the median nerve distribution." (Tr. 203). Plaintiff was instructed to continue performing "light duty" work. (Tr. 203). Treatment notes dated November 14, 1997, reveal that Plaintiff's pain improved with "rest and therapy." (Tr. 200).

On April 23, 1998, Plaintiff was examined by Dr. Harris. (Tr. 188). Plaintiff reported that her hand pain had returned. (Tr. 188). Plaintiff was "very tender" over the right and left lateral epicondyle. (Tr. 188). Tinel's test was "strongly positive" on the right and "weakly positive" on the left. (Tr. 188). The doctor concluded that Plaintiff was experiencing an exacerbation of tendinitis, carpal tunnel syndrome, and epicondylitis. (Tr. 188). Dr. Harris recommended that Plaintiff "find another job that does not require such vigorous use of her hands." (Tr. 188). A July 30, 1998 examination of Plaintiff's hands revealed that her condition was "stable" without "significant further improvement." (Tr. 185).

On December 17, 1998, Plaintiff participated in a nerve conduction examination, the results of which were "within normal limits." (Tr. 206-08). Dr. Sam Ho, who conducted the examination, recommended that Plaintiff continue conservative treatment of her condition. (Tr. 208). The doctor further noted that Plaintiff was able to continue working so long as she not perform activities requiring the repetitive use of her hands. (Tr. 208).

---

[1] Tinel's test (or Tinel's sign) refers to a tingling sensation at the end of a limb produced by tapping the nerve at a site of compression or injury. This test is also used to detect the presence of carpal tunnel syndrome. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* T-140 (Matthew Bender) (1996); Frank L. Urbano, M.D., *Tinel's Sign and Phalen's Manuever: Physical Signs of Carpal Tunnel Syndrome*, Hospital Physician, July 2000 at 39.

On July 28, 2003, Plaintiff began participating in counseling at Wedgewood Christian Counseling. (Tr. 227). Treatment notes, authored by Dr. Ronald VanValkenburg on August 14, 2003, reveal that Plaintiff was diagnosed with panic disorder without agoraphobia. (Tr. 230). Her GAF score was rated as 65.[2] (Tr. 230). The doctor noted that Plaintiff was experiencing "good results" with her current medication regimen. (Tr. 230). Following a September 4, 2003 evaluation, Plaintiff's GAF score was rated as 75.[3] (Tr. 301-02).

On February 10, 2004, Plaintiff participated in a psychological evaluation conducted by clinical psychologist, David Berghuis, and licensed psychologist, Arthur Jongsma, Ph.D. (Tr. 235-38). Plaintiff reported that she was experiencing panic attacks. (Tr. 235). The results of a mental status examination were unremarkable. (Tr. 236-38). The examiners also noted that Plaintiff's "experience of panic is moderately well controlled." (Tr. 238). Plaintiff was diagnosed with panic disorder without agoraphobia and her GAF score was rated as 66. (Tr. 238).

On February 18, 2004, Plaintiff participated in a consultive examination conducted by Dr. Michael Simpson. (Tr. 240-43). Plaintiff reported that she was experiencing hand pain. (Tr. 240). An examination of Plaintiff's hands revealed "no evidence of joint laxity, crepitance, or effusion." (Tr. 241). Plaintiff exhibited "mildly diminished" grip strength and her manual dexterity

---

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994). A score of 65 indicates that the individual is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 34.

[3] A GAF score of 75 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors; no more than slight impairment in social, occupational, or school functioning." DSM-IV at 34.

was "unimpaired." (Tr. 241). Romberg testing[4] was negative and Plaintiff walked with a normal gait. (Tr. 242).

On February 26, 2004, John Gallagher, Ed.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 244-57). Determining that Plaintiff suffered from panic disorder without agoraphobia, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.06 (Anxiety-Related Disorders) of the Listing of Impairments. (Tr. 245-53). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular impairment. (Tr. 254). Specifically, the doctor concluded that Plaintiff suffered no restrictions in the activities of daily living, no difficulties in maintaining social functioning, experienced mild difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. (Tr. 254).

On June 9, 2004, Kenneth Adams, MSW, completed a Mental Assessment of Ability to do Work-Related Activities (Mental) form regarding Plaintiff's non-exertional limitations. (Tr. 303-04). With respect to Plaintiff's ability to make occupational adjustments, Adams characterized Plaintiff's ability to follow work rules as "good." (Tr. 303). Plaintiff's abilities were characterized as "fair" in the following categories: (1) relate to co-workers, (2) use judgment, (3) interact with supervisors, and (4) function independently. (Tr. 303). Finally, Plaintiff's abilities were characterized as "poor" in the following categories: (1) deal with work stresses, (2) maintain attention/concentration, and (3) deal with public. (Tr. 303).

---

[4] Romberg test is a neurological test designed to detect poor balance. *See* Romberg Test, available at http://www.mult-sclerosis.org/RombergTest.html (last visited on July 10, 2008). The patient stands with her feet together and eyes closed. The examiner will then push her slightly to determine whether she is able to compensate and regain her posture. *Id*.

Adams concluded that Plaintiff's ability to understand, remember, and carry out simple job instructions was "good." (Tr. 304). Adams described Plaintiff's ability to maintain personal appearance as "good." (Tr. 304). Plaintiff's abilities were characterized as "fair" in the following areas: (1) relate predictably in social situations, (2) behave in an emotionally stable manner and (3) demonstrate reliability. (Tr. 304). Adams rated Plaintiff's current GAF score as 60 [5] and her highest GAF score within the previous 12 months as 65.[6] (Tr. 304).

On August 25, 2004, Plaintiff was examined by Dr. VanValkenburg. (Tr. 293). Plaintiff reported that she was "waiting for disability." (Tr. 293). The doctor reported that he doubted the "appropriateness" of Plaintiff seeking disability and instead recommended that she resume "productive working." (Tr. 293).

On January 13, 2005, Plaintiff was examined by Dr. Steven Naum. (Tr. 309-10). Plaintiff reported that she was experiencing intermittent pain, numbness, and tingling in her hands. (Tr. 309). An examination of Plaintiff's wrists and fingers revealed normal range of motion, but a grind test was positive at the basilar joint of Plaintiff's thumbs. (Tr. 309). An examination of Plaintiff's hands revealed no evidence of muscle wasting or atrophy and capillary refill to Plaintiff's fingers was within normal limits. (Tr. 309). While Tinel's test was negative in Plaintiff's hands, an examination of the ulnar nerves produced a positive Tinel's sign. (Tr. 309). The doctor concluded that Plaintiff exhibited "symptoms consistent with bilateral basilar joint arthritis and carpal tunnel syndrome." (Tr. 310).

---

[5] A GAF score of 60 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

[6] A GAF score of 65 indicates that the individual is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34.

On February 2, 2005, Plaintiff completed a questionnaire regarding her activities. (Tr. 162-67). Plaintiff reported that on a "typical" day she exercises, reads, performs "light" housework, runs errands, watches television, and cares for her grandchildren. (Tr. 162). Plaintiff also reported that she enjoys shopping, attending movies, painting, and sewing. (Tr. 162).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[7] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[7] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

**B. <u>The ALJ's Decision</u>**

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) arthritis of the hands and (2) panic disorder. (Tr. 27). The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 27). The ALJ determined that despite these impairments, Plaintiff retained the ability to perform her past relevant work as a general office clerk. (Tr. 27-30). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

**1. The ALJ's Decision is Supported by Substantial Evidence**

Plaintiff bears the burden of demonstrating her entitlement to benefits, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) she can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) she cannot perform activities requiring forceful use of her hands; (3) she cannot perform constant gripping or fingering activities; (4) she cannot operate vibratory hand tools; (5) she cannot perform work with unusually high levels of stress (e.g., work with unusually high production standards, or critical, emergency, or dangerous work). (Tr. 27). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence. Based, in part, on the testimony of a vocational expert, the ALJ concluded that despite her limitations, Plaintiff retained the ability to perform her past relevant work as a general office clerk. (Tr. 27-30).

   a.   The ALJ Properly Evaluated Plaintiff's Impairments

As noted above, the ALJ determined that Plaintiff suffers from arthritis of the hands and panic disorder, severe impairments. Plaintiff asserts that the ALJ erred by not also concluding that she suffered from severe carpal tunnel syndrome.

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work

situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). An impairment is less than severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." *Williamson v. Secretary of Health and Human Services*, 796 F.2d 146, 151 (6th Cir. 1986) (citations omitted).

As the administrative record reveals, the medical evidence is somewhat mixed concerning the cause of Plaintiff's hand impairments. With respect to Plaintiff's claim that she suffers from severe carpal tunnel syndrome, the ALJ stated:

> The claimant has alleged that she suffers from carpal tunnel syndrome, a medical condition which the undersigned does not find to be severe. Nerve conduction studies were negative. While the evidence suggests some symptoms indicative of carpal tunnel syndrome, there is no evidence that the claimant's carpal tunnel symptomatology has any effect upon her ability to perform work-related activities. The claimant's alleged hand pain can be attributed to her arthritis.

(Tr. 27).

As Defendant correctly asserts, "the ALJ found that [Plaintiff] had a severe hand impairment - he differed with [Plaintiff] only over its cause." While perhaps a close call, the Court finds that the ALJ's determination that Plaintiff did not experience severe carpal tunnel syndrome, but suffered instead from severe arthritis of the hands is supported by substantial evidence. However, even if the ALJ erred in this regard it does not call into doubt the substantiality of his ultimate conclusion that Plaintiff is not disabled.

At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that

where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir., Feb. 22, 2008) (citing *Maziarz*, 837 F.2d at 244); *Fisk v. Astrue*, 253 Fed. Appx. 580, 583-84 (6th Cir., Nov. 9, 2007) (same).

       Here, the ALJ determined that Plaintiff suffered from severe impairments at step two of the sequential analysis and continued with the remaining steps thereof, considering in detail the medical evidence of record. Moreover, as noted above, the ALJ's RFC determination is supported by substantial evidence, a matter which Plaintiff does not challenge. Thus, even if the Court were to conclude that the ALJ erred in failing to find that Plaintiff suffered from severe carpal tunnel syndrome, such does not call into question the substantiality of the evidence supporting the ALJ's decision. *See Heston v. Commissioner of Social Security*, 245 F.3d 528, 535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); *Berryhill v. Shalala*, 1993 WL 361792 at *7 (6th Cir., Sep. 16, 1993) ("the court will remand the case to the agency for further consideration only if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture...'").

Accordingly, the Court finds that the ALJ properly determined that Plaintiff did not suffer from severe carpal tunnel syndrome. Moreover, even if the ALJ erred in this regard it does not call into doubt the substantiality of his ultimate conclusion that Plaintiff is not disabled.

b. Plaintiff is not Entitled to Remand

As part of her request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (Tr. 314-24). The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. (Tr. 5-8). This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

This additional material consists of medical records regarding examinations that occurred long after the ALJ issued his opinion in this matter. Thus, Plaintiff cannot establish that

there exists good cause for her failure to submit this information to the ALJ in this matter. Furthermore, it is not reasonable to assert that consideration of this material by the ALJ would have led to a different result.

The first item regards Plaintiff's participation in an April 10, 2006 EMG examination, the results of which revealed evidence of "mild to moderate" carpal tunnel syndrome in Plaintiff's right hand and "early stage" carpal tunnel syndrome in Plaintiff's left hand. (Tr. 314-19). The results of this examination are not inconsistent with the ALJ's RFC determination.

The remaining two items concern: (a) an opinion rendered by Kathleen Cramer, Ph.D., a psychologist who counseled Plaintiff from August 2006 through January 2007, and (b) the results of an October 18, 2006 psychological evaluation conducted by Laura Bennett, M.A. (Tr. 320-24). This evidence arguably supports the conclusion that Plaintiff became disabled at some point in time after the decision in this matter. In this respect, the Court again notes that Plaintiff is presently receiving disability benefits pursuant to a subsequent application which presumably considered this very evidence. There is no evidence that either Cramer or Bennett examined Plaintiff prior to the decision in this case. Moreover, there is nothing in their treatment notes suggesting that their opinions concern Plaintiff's condition prior to the ALJ's decision in this matter. Accordingly, the Court is precluded from considering this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: July 30, 2008

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge